UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JASON THOMAS YOUNG, §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>RELIANCE STANDARD LIFE §<br>INSURANCE COMPANY and §<br>MATRIX ABSENCE §<br>MANAGEMENT, INC.,[1] §<br>*Defendants* § | CIVIL NO. 1:20-CV-739-LY-SH |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 11), filed November 3, 2020; Plaintiff's Amended Motion for Attorney's Fees (Dkt. 17), filed November 17, 2020; and the associated response and reply briefs. On October 27, 2020, the District Court referred all pending and future non-dispositive and dispositive motions to the undersigned Magistrate Judge for resolution and Report and Recommendation,[2] pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.    General Background**

In January 2019, Plaintiff Jason Thomas Young worked as a truck driver for Pilot Travel Centers, L.L.C., and participated in a long-term disability benefits plan governed by the Employee

---

[1] Plaintiff misnamed Matrix Absence Management, Inc. as "Matrix Absence Management Company" in the style of the case. *See* Dkt. 11 at 1.

[2] Pursuant to FED. R. CIV. P. 54(d)(2)(D), a court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Absent consent of the parties, dispositive matters may be referred only for report and recommendation. 28 U.S.C. § 636(b). Accordingly, the Court issues its findings in the form of a report and recommendation.

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 ("Plan" or "Policy"). The Plan provided that Plaintiff would receive a "Monthly Benefit" if Plaintiff became totally disabled. Dkt. 7 at ¶ 14. The Plan also provided that "Other Income Benefits[3] are to be deducted from the Monthly Benefit." *Id.* Reliance Standard Life Insurance Company ("Reliance") is the insurer of the Plan, and Matrix Absence Management, Inc. ("Matrix") is the administrator.

On January 2, 2019, Plaintiff sustained "permanent and disabling injuries" in a car collision. *Id.* ¶ 6. After the collision, Plaintiff submitted to Reliance a claim for long-term disability benefits under the Plan. Reliance agreed that Plaintiff was totally disabled and agreed to pay him a monthly benefit of $3,150.76. After Plaintiff received $153,774.14 from a settlement with the third party that had caused the accident, however, Reliance notified Plaintiff on January 17, 2020, that it would offset his benefits by the settlement amount ("Settlement Offset") because it considered the settlement to be "Other Income Benefits" under the Plan. *Id.* ¶ 17. Accordingly, Reliance immediately reduced Plaintiff's monthly benefit by $2,562.90, to $587.86 per month.

On March 17, 2020, Plaintiff appealed Reliance's decision, arguing that the settlement of a third-party tort liability suit and the payment of underinsured motorist benefits were not included in Other Income Benefits under the Plan. On June 5, 2020, Reliance affirmed its original decision that it was entitled to the Offset.

---

[3] Plaintiff alleges that under the Plan, "Other Income Benefits" includes:

all benefits (except medical or death benefits) including any settlement made in place of such benefits (whether or not liability is admitted) an Insured is eligible to receive because of his/her Total Disability under:

    (a) Workers' Compensation Laws;
    (b) occupational disease law;
    (c) any other laws of like intent as (a) or (b) above; and
    (d) any compulsory benefit law;

Dkt. 7 ¶ 15.

On July 10, 2020, Plaintiff filed this action against Reliance and Matrix ("Defendants") "to clarify the rights to benefits under a policy of long term disability benefits." Dkt. 1 at 1. Specifically, in his Original Complaint, Plaintiff alleged a claim under 29 U.S.C. § 1132(a)(1)(B) that "there is no basis in the policy for any offset or reduction based on the third party settlement that Plaintiff made." *Id.* ¶ 26. Plaintiff further alleged that Defendants violated their duties under 29 U.S.C. § 1133 by failing to advise him "in the initial denial letter that they did not consider any of the settlement monies received by him to have been based on medical expenses incurred in the past or future." *Id.* ¶ 28. In the alternative, Plaintiff alleged that he is entitled to equitable relief pursuant to 29 U.S.C. § 1132(a)(3). Plaintiff sought to recover benefits due, to enforce his rights to benefits under the Policy, and to clarify his future rights to benefits under the terms of the Reliance policy, as well as attorney's fees and pre-judgment and post-judgment interest.

Eighteen days after Plaintiff filed suit, Reliance sent Plaintiff an email notifying him that "at this time we will be terminating the offset in the amount of $2,562.90 (monthly), and will refund Mr. Young the monies that have been offset to date." Dkt. 7-1 at 2. Reliance's email, however, also warned Plaintiff that "under the policy, any monies paid under a compulsory benefit law, such as PIP coverage (i.e. wage loss), are to be offset." *Id.* The email asked Plaintiff to "advise if you will be requesting a formal Dismissal of the lawsuit recently file[d]. If not we will refer the matter to our outside counsel." *Id.*

On September 24, 2020, Defendants filed their first motion to dismiss, arguing that Plaintiff's claims for benefits should be dismissed for lack of subject matter jurisdiction. Defendants contend that "the claims in this lawsuit have been mooted" because Reliance "reversed its prior decision and is now paying benefits in the amount claimed by Plaintiff." Dkt. 2 at 2, 4. Plaintiff filed his

3

First Amended Complaint (Dkt. 7) on October 26, 2020. The undersigned dismissed as moot Defendants' first motion to dismiss by text order issued November 18, 2020.

In his First Amended Complaint, Plaintiff alleges all claims in his Original Complaint, but adds a claim under § 1132(a)(1)(B) that "[t]here is no basis in the policy for any offset or reduction based on any payment of PIP benefits that Plaintiff has received." Dkt. 7 ¶ 33. Plaintiff seeks the following relief:

> (1) Find that Defendants violated the terms of the Policy and Plaintiff's rights thereunder by reducing, and claiming an offset to, the benefits owed to Plaintiff as a result of his receipt of the settlements at issue in this matter, i.e., for the liability claim for bodily injuries, the payment of underinsured motorist benefits, or the payment of PIP benefits for medical bills;
>
> (2) Find that the language of the "Other Income Benefits" section of the Policy does not reach or include: settlements of liability claims for bodily injuries; payment of claims for underinsured motorist benefits for bodily injuries; payment of claims for PIP benefits; and payment of claims under automobile insurance coverages that the claimant personally purchased;
>
> (3) Enter an injunction prohibiting Matrix and Reliance from interpreting the "Other Income Benefits" language cited as including settlements of liability claims for bodily injuries, underinsured motorist claims for bodily injuries, PIP benefits paid for medical expenses, or any benefits flowing from insurance policies that the claimant personally purchased;
>
> (4) Order Reliance to pay Plaintiff's future weekly disability benefits pursuant to the terms of the Policy without offsets for any past or future settlements of bodily injury claims, any past or future payment of underinsured motorist benefits for bodily injury claims, or any past or future payment of PIP claims;
>
> (5) Award Plaintiff pre-judgment interest on the amount of his delayed benefits (seven months);
>
> (6) Award Plaintiff reasonable attorney's fees and costs incurred; and
>
> (7) Provide such other and further relief as the Court deems equitable, just and proper.

*Id.* ¶¶ 37-46.

In the instant Motion to Dismiss, Defendants again argue that this action should be dismissed under Rule 12(b)(1) for lack of jurisdiction because there is no longer a live case or controversy. Alternatively, Defendants argue that Plaintiff's newly asserted claim regarding PIP benefits should be dismissed for failure to exhaust under Rule 12(b)(6), and that Matrix is not a proper ERISA defendant. Plaintiff opposes the Motion to Dismiss and has filed an Amended Motion for Attorney's Fees and Costs.

## II.     Motion to Dismiss

The Court first addresses Defendants' Motion to Dismiss.

### A.  Rule 12(b)(1) Standard

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus

5

undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

## C. Analysis

Defendants contend that Plaintiff has suffered no injury because Reliance terminated the Settlement Offset and refunded Plaintiff the money deducted from his disability benefits.

### 1. Article III Jurisdiction

Defendants argue that Plaintiff lacks Article III "standing"[4] to pursue his ERISA claims because he has failed to show that he has suffered an injury in fact. Plaintiff responds that Defendants have failed to sustain their burden to show that Plaintiff's ERISA claims are moot by showing that it is "absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." Dkt. 16 at 4 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). Plaintiff points out that he has sued not only to restore the payment of benefits, but also to "clarify his right to future benefits" Dkt. 16 at 5. Plaintiff argues that those rights to future benefits are at risk if this case is dismissed without a ruling clarifying the meaning of the offset language in the Policy. Plaintiff submits that although Reliance returned the benefits wrongfully withheld, he still is entitled to prejudgment interest on those wrongly without benefits. Plaintiff further argues that his claims are not moot because he is entitled to attorney's fees, as he has established some degree of success on the merits. Finally, Plaintiff contends that even if there is no longer a controversy as to whether Reliance is entitled to an offset for the bodily injury settlements, "there is still a controversy over whether Reliance is entitled to an offset for payment of PIP benefits." *Id.*

Defendants did not file a reply brief. Nonetheless, the Court must determine whether it has jurisdiction to review Plaintiff's claims. Standing and mootness are threshold jurisdictional issues which cannot be waived. *See Zimmerman v. City of Austin, Texas*, 969 F.3d 564, 567 (5th Cir.

---

[4] Dkt. 11 at 6. As explained further below, Defendant confuses standing with mootness.

2020) (stating that "questions of subject-matter jurisdiction cannot be forfeited or waived" and federal courts may examine the basis of jurisdiction *sua sponte*).

### a. Standing

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing "Cases" or "Controversies." U.S. CONST. art. III, § 2; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 477.

"Although the case-or-controversy requirement of Article III, § 2 of the Constitution 'underpins both our standing and our mootness jurisprudence,' standing and mootness inquiries diverge in several important respects, one of which is timing." *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019) (quoting *Laidlaw*, 528 U.S. at 180). The standing inquiry focuses on "whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Whether a plaintiff has standing is determined at the time of filing. *Id.* at 570 n.5 (noting that "standing is to be determined as of the commencement of suit"). The party invoking federal jurisdiction bears the burden to show standing. *Id.* at 561.

While standing is determined at the time suit is filed, mootness is determined by actions that occur after a suit has been filed. *See Laidlaw*, 528 U.S. at 191 (noting that, "by the time mootness is an issue, the case has been brought and litigated"); *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019) ("Although standing is assessed as of the date on which suit was filed, courts may not decide cases that since have become moot because there is no longer a live case or controversy."). The case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate. It is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up); *see also Laidlaw*, 528 U.S. at 189 ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). A case becomes moot and there is no longer a case or controversy "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin*, 568 U.S. at 172. In other words, a case become moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). However, "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984).

Accordingly, Defendants' argument that Plaintiff lacks standing because Reliance terminated the Settlement Offset after he filed suit relies on the wrong jurisdictional doctrine: this argument concerns mootness, not standing.[5] *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (noting

---

[5] The Supreme Court has noted that confusion regarding mootness and standing "is understandable, given this Court's repeated description of mootness as 'the doctrine of standing set in a time frame.'" *Laidlaw*, 528 U.S. at 170.

9

that parties had standing to bring claims and crossclaims when suit was filed, but events that occurred afterward called into question issue of mootness). Clearly, Plaintiff had standing at the time he filed this suit because he alleged an injury in fact – that Reliance wrongly offset his disability benefits, in violation of the Plan.[6] Accordingly, the undersigned recommends that the District Court deny Defendants' Motion to Dismiss Plaintiff's suit based on lack of standing.

     **b. Mootness**

The Court also must address whether Plaintiff's case has become moot. As noted, a case becomes moot "if it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307. Defendants argue that there is no longer a case or controversy because Reliance terminated the Settlement Offset to Plaintiff's disability benefits after Plaintiff filed suit. A defendant, however, "cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91 (quotation omitted). Thus, a defendant claiming that its voluntary compliance moots a case "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190; *see also Already*, 568 U.S. at 93 (holding that defendant met its burden to show case was moot where defendant issued "unconditional and irrevocable" covenant not to sue and moved to dismiss with prejudice all claims against competitor).

Defendants have not sustained their heavy burden to show that "it is absolutely clear" that Reliance will not reinstate the Settlement Offset. Although Reliance notified Plaintiff in the July 2020 email that it agreed "at this time" to terminate the Settlement Offset, Reliance made no

---

[6] Because Plaintiff has standing, Defendants' reliance on *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020), is misplaced.

indication that its decision was final, unconditional, and irrevocable. *Id.* Specifically, the email states in relevant part:

> Upon review and discussion, at this time we will be terminating the offset in the amount of $2.562.90 (monthly), and will refund Mr. Young the monies that have been offset to date. It appears this offset began as of January, 2020. Mr. Young can expect his benefits to resume to the pre-offset amount in the next benefit payment.
>
> ***
>
> Lastly, please advise if you will be requesting a formal Dismissal of the lawsuit recently file. If not, we will refer the matter to our outside counsel.

Dkt. 7-1 at 2. The email did not state unequivocally that Reliance's decision to reinstate the Settlement Offset was final, that it would not reinstate the offset in the future, or that its interpretation of the Plan was wrong. *See Texas*, 933 F.3d at 449-50 (holding that state's action against Attorney General and EEOC challenging validity of EEOC's guidance on employers' use of criminal records in hiring was not rendered moot by general memorandum from Associate Attorney General where memorandum did not make "absolutely clear" that allegedly wrongful behavior could not reasonably be expected to recur); *Bio Tr. Nutrition, LLC v. Biotest, LLC*, No. A-13-CA-884-LY, 2014 WL 2765690, at *5 (W.D. Tex. June 18, 2014) (holding that defendants failed to demonstrate that trademark case was moot where parties had not entered into enforceable litigation standstill agreement as to claims).

Additionally, Defendants have not stated in their pleadings that Reliance's interpretation of the Settlement Offset was wrong or that it would not reinstate the Settlement Offset in the future. *See id.* (holding that defendants failed to demonstrate case was moot where they did not make explicit representation unequivocally disclaiming any intent to sue plaintiff regarding use of mark at issue). Instead, Defendants simply state that Plaintiff's allegation that Reliance could reinstate the Settlement Offset in the future "demonstrate[s] there is no actual injury or the possibility of one

11

that is beyond conjecture." Dkt. 11 at 5. Defendants, however, cannot sustain their burden to show that it is absolutely clear that the Settlement Offset could not reasonably be expected to recur "by assuming the answer to that question." *Already*, 568 U.S. at 92; *see also Laidlaw*, 528 U.S. at 190 (stating that defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur").

Moreover, as noted above, Plaintiff's claim that Defendants violated the Policy by imposing the Settlement Offset is not the only claim Plaintiff has asserted. In addition to seeking the benefits withheld, Plaintiff asks the Court to (1) clarify his right to future benefits under then Policy; (2) enter an injunction prohibiting Defendants from interpreting the "Other Income Benefits" language cited as including settlements of liability claims for bodily injuries and underinsured motorist claims for bodily injuries; and award him (3) prejudgment interest on the withheld benefits and (4) attorney's fees.[7] None of these issues is moot. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172. Accordingly, the Court has jurisdiction to adjudicate this case, and the undersigned recommends that the District Court deny Defendants' Motion to Dismiss Plaintiff's lawsuit under Rule 12(b)(1).

### 2. Third-Party Administrators

The Court now addresses Defendants' Rule 12(b)(6) arguments. Defendants argue that Matrix, the third-party administrator ("TPA") of the Plan, is not a proper party under ERISA. The Fifth Circuit, however, has held that "[n]either the statute nor caselaw directs that § 1132(a)(1)(B) should insulate an entity from liability merely for being a TPA." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013). In *LifeCare*, the Fifth Circuit held that:

---

[7] Because the Court finds that the Settlement Offset issue is not moot, the Court need not address Plaintiff's alternative arguments that his claims are not moot.

> the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan and that if an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits. . . . Where a TPA exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan in a way that amounts to an abuse of discretion, liability may attach.

*Id.*

Here, Plaintiff alleges that Matrix was involved in all decisions regarding his claims, including the decisions to pay the claim and apply the Settlement Offset. *See* Dkt. 7 ¶¶ 24-25. The Court finds that Plaintiff has alleged facts sufficient to state a plausible claim against Matrix under § 1132(a)(1)(B). Defendants' allegation that Matrix did not have final decision-making authority over claim decisions does not preclude the possibility that it took on the responsibilities of the administrator. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Matrix as an improper party be denied.

### 3. Plaintiff's Claim Regarding PIP Benefits

In his First Amended Complaint, Plaintiff brings a claim against Defendants under § 1132(a)(1)(B), alleging: "There is no basis in the policy for any offset or reduction based on any payment of PIP benefits that Plaintiff has received." Dkt. 7 ¶ 33. Plaintiff does not allege that Defendants actually applied an offset for PIP benefits. Thus, Plaintiff failed to allege denial of a benefit. Even if Defendants did apply such an offset, there is no indication that Plaintiff exhausted his administrative remedies as to this claim. The Fifth Circuit has held that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004). Accordingly, Plaintiff's claim as to PIP benefits should be dismissed.

### III.     Plaintiff's Motion for Attorney's Fees

Section § 1132(g)(1) of ERISA's civil enforcement provision provides: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Relying on *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010), Plaintiff argues that Defendants' decision to reinstate the Settlement Offset demonstrates that he has had "some success on the merits" and therefore is entitled to attorney's fees and costs under § 1132(g)(1).

In *Hardt*, the Supreme Court held that a fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1), but must show "some degree of success on the merits." *Id.* at 252, 255. The Supreme Court further explained that

> A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victor[y], but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.

*Id.* at 255 (internal quotation marks omitted). Applying this standard, the Supreme Court found that the claimant was entitled to fees. Although the district court had denied both parties' motions for summary judgment, it found "compelling evidence that Ms. Hardt is totally disabled due to her neuropathy" and stated that it was "inclined to rule in Ms. Hardt's favor" on her benefits claim, but declined to do so before "first giving Reliance the chance to address the deficiencies in its" statutorily mandated "full and fair review" of that claim. *Id.* 255-56. The claimant thus obtained a judicial order instructing Reliance "to act on Ms. Hardt's application by adequately considering all the evidence" within 30 days; "[o]therwise, judgment will be issued in favor of Ms. Hardt." *Id.* at 256. After Reliance conducted that court-ordered review, and consistent with the district court's

14

appraisal, Reliance reversed its decision and awarded Hardt the benefits she sought. The Supreme Court concluded that these facts "establish that Hardt has achieved far more than 'trivial success on the merits' or a 'purely procedural victory.'" *Id.*

In contrast to the claimant in *Hardt*, the Court has not made any decision on the merits of any of Plaintiff's claims. Reliance has reinstated Plaintiff's benefits, but the Court has made no ruling on the merits in this case. Accordingly, Plaintiff's Motion for Attorney's Fees is premature. *See Mull v. Motion Picture Indus. Health Plan*, 937 F. Supp. 2d 1161, 1181 (C.D. Cal. 2012) (finding claim for attorney's fees under § 1132(g)(1) premature "until and unless the plaintiffs win a judgment on one of their substantive claims"); *Marsteller v. Life Ins. Co. of N. Am.*, No. 96-0015-C, 1997 U.S. Dist. LEXIS 10176, 1997 WL 403235 at *4-5 (W.D. Va. July 9, 1997) ("Here, because plaintiff only will have the ERISA claim remanded to the plan administrator, he has not yet prevailed on the merits. Thus, it would be premature to award attorney's fees at this stage in the litigation."). Accordingly, the undersigned recommends denying Plaintiff's Motion for Attorney's Fees without prejudice.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 11) is **GRANTED IN PART and DENIED IN PART**. The undersigned recommends that the District Court (1) **DENY** the Motion to dismiss Plaintiff's suit for lack of jurisdiction under Rule 12(b)(1); (2) **DENY** the Motion to dismiss Matrix Management Inc. as an improper party; and (3) **GRANT** the Motion to dismiss Plaintiff's claim regarding an offset for PIP benefits (¶ 33 of First Amended Complaint). The Court **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Attorney's Fees (Dkt. 17) without prejudice.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 1, 2021.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　SUSAN HIGHTOWER
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE